# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEAH BRIZZY, | : |
| Plaintiff, | : |
| v. | : 3:17-cv-2305 |
| | : (JUDGE MARIANI) |
| LUZERNE COUNTY CHILDREN | : |
| AND YOUTH SERVICES, et al., | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On February 22, 2016, Plaintiff, Leah Brizzy, filed a writ of summons in the Court of Common Pleas of Luzerne County. Plaintiff then filed a complaint asserting one count against Defendants under 42 U.S.C. § 1983. Plaintiff's complaint alleged that she was denied procedural and substantive due process and requested an award of damages. (Doc. 1). On December 14, 2017, Defendants timely removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1331. (Doc. 1). Defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) on December 21, 2017. (Doc. 4).

On June 22, 2018, the matter was referred to Magistrate Judge Carlson. On June 27, 2018, Magistrate Judge Carlson recommended that Defendants' motion to dismiss the complaint be granted, and that Plaintiff be granted leave to amend the complaint in order to address the deficiencies identified. (Doc. 9). On July 11, 2018, Plaintiff filed an Amended

1

Complaint. (Doc. 11). On July 12, 2018, this Court issued an Order, adopting Magistrate Judge Carlson's Report and Recommendation and deeming Plaintiff's Amended Complaint as filed. (Doc. 13).

On August 1, 2018, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6) (Doc. 20), which is now before the Court. The issues have been fully briefed and Defendants' Motion is ripe for disposition. For the reasons set forth below, the Court will deny Defendants' Motion to Dismiss.

## II. FACTUAL ALLEGATIONS

Plaintiffs' Amended Complaint (Doc. 11) alleges the following facts which, for the purposes of resolving Defendants' Motion to Dismiss, the Court takes as true:

Plaintiff, Leah Brizzy, gave birth to C.B. on March 26, 2012. (*Id.* at ¶ 3). On November 2, 2012, Brizzy noticed that C.B.'s eyes were red, slightly swollen, and emitted a green discharge. (*Id.* at ¶ 9). On November 4, 2012, she also noticed a laceration on C.B.'s tongue. (*Id.* at ¶ 10). C.B. had appointments with his pediatrician, Dr. Douglas R. Lincoln, M.D. ("Dr. Lincoln"), on November 2, 4, and 6, 2012. (*Id.* at ¶ 11). During those appointments, Brizzy sought care for C.B. for conjunctivitis and the tongue laceration. (*Id.*). Pursuant to Dr. Lincoln's recommendation, Brizzy took C.B. to Geisinger Hospital on November 6, 2012. (Doc. 11, ¶ 12). At Geisinger Hospital, the Hospital performed a CT Scan, revealing that C.B. also had bilateral healing femoral fractures and a possible acute left tibia buckle fracture. (*Id.* at ¶ 13).

On November 7, 2012, Dr. Paul J. Bellino, M.D. ("Dr. Bellino"), referred C.B. to Luzerne County Children and Youth Services ("CYS") based on the medical conditions revealed during C.B.'s visit to the Hospital. (*Id.* at ¶ 14). Following the referral, an unidentified CYS caseworker went to Brizzy's home and interviewed her and her partner at the time. (*Id.* at ¶ 16). During the interview, Brizzy explained that C.B. regularly received medical care since birth and reached all developmental milestones. (*Id.* at ¶ 17). Moreover, Brizzy explained that she did not notice any signs of injury to C.B. and was unaware of any bone fractures until the Hospital visit. (*Id.* at ¶ 18). During C.B.'s appointments with Dr. Lincoln, Dr. Lincoln never expressed concern about C.B.'s welfare. (Doc. 11, ¶ 19). Likewise, C.B.'s daycare provider did not express concerns regarding C.B.'s welfare. (*Id.*).

A week after the interview, CYS issued a Shelter Care Order, requiring that C.B. be placed into shelter care and determining that allowing C.B. to remain in Brizzy's home would be contrary to C.B.'s welfare. (*Id.* at ¶ 20). On or about January 3, 2013, the Department of Public Welfare ("Department"), filed an indicated report of child abuse with the ChildLine Register. (*Id.* at ¶ 21). The report named Brizzy and her partner as perpetrators of physical abuse upon C.B., specifically, for lack of supervision. (*Id.*).

Brizzy then filed a request to expunge her name from the ChildLine Registry, but her request was denied. (*Id.* at ¶ 22). Brizzy appealed that decision, and a hearing was held on October 3, 2013, at the Bureau of Hearings and Appeals in Plymouth, Pennsylvania. (*Id.* at ¶ 23). Brizzy's appeal was, however, sustained on the grounds that CYS did not meet its

3

burden of establishing, by clear and convincing evidence, a lack of supervision constituting physical child abuse pursuant to 23 Pa. Cons. Stat. Ann. § 6303. (Doc. 11, ¶ 24).

On December 19, 2013, the Department of Welfare filed an application for reconsideration. (*Id.* at ¶ 25). On January 17, 2014, the Secretary of Public Welfare granted the application and remanded the matter to the Bureau of Hearings and Appeals to receive testimony from Dr. Bellino, the Department's additional witness. (*Id.*). On March 10, 2014, the Bureau held a hearing, at which Dr. Bellino testified. (*Id.* at ¶ 26). On May 22, 2014, Brizzy's appeal was sustained on the grounds that CYS did not meet its burden of presenting substantial evidence that there was a lack of supervision constituting child abuse. (*Id.* at ¶ 27). Because the appeal was sustained, the Department was also directed to expunge Brizzy's indicated child abuse report from the ChildLine Registry. (*Id.* at ¶ 28).

Throughout the administrative processes, CYS did not provide evidence establishing "how such injuries would be observable to a parent," "evidence of the non-accidental nature" of C.B.'s injuries, nor evidence that C.B. had been abused by Brizzy. (Doc. 11, ¶¶ 30, 32). Moreover, Brizzy "voluntarily participated in CYS's investigation, followed all directions she received from the agency and complied with all requested service." (*Id.* at ¶ 31).

According to the Amended complaint, C.B. was placed in CYS custody for almost two years, as a result of CYS's investigation. (*Id.* at ¶ 33). The "continued separation of C.B. from Brizzy and the refusal of CYS to otherwise permit [Brizzy] to have contact and continuous relations and have a parental bond with C.B. when they knew that they had no

4

evidence that [Brizzy] had ever abused or neglected C.B." violated Brizzy's Fourteenth Amendment right to procedural and substantive due process. (*Id.* at ¶¶ 38, 39).

### III. STANDARD OF REVIEW

A complaint must be dismissed under FED. R. CIV. P 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14

5

(3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786–87 (quoting *Iqbal*, 556 U.S. 679). Put differently, the complaint must contain enough factual content to "nudge" the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Under FED. R. CIV. P 12(b)(6), "the defendant has the burden of showing no claim has been stated." *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

### IV. ANALYSIS

Defendants raise two issues in support of their Motion to Dismiss. Specifically, Defendants argue that (1) Plaintiff's Amended Complaint fails to state a claim upon which

relief can be granted and must be dismissed; and (2) Plaintiff cannot recover punitive damages against Defendants. The Court addresses each issue separately below.

### A. Failure to State a Claim Upon Which Relief Can Be Granted

Plaintiff's single-count Amended Complaint broadly asserts that Defendants violated Brizzy's substantive and procedural due process rights under 42 U.S.C. § 1983 and should be held liable under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) based on a failure to train theory.[1] In their Brief in Support of the Motion to Dismiss, Defendants argue that Plaintiffs cannot state a claim for *Monell* liability under a failure to train theory.

To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate the violation of a right protected by the Constitution or laws of the United States, committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)(en banc). Section 1983 is not in itself a source of substantive rights, instead providing a remedy for violations of rights protected by other federal statutes or by the U.S. Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L. Ed.2d 791 (1985). Therefore, in evaluating a § 1983 claim, a Court must first "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini*, 212 F.3d at 806 (citing *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). As

---

[1] Although Plaintiff raised two other theories of liability in its Brief in Opposition to Defendants' Motion to Dismiss (Doc. 24, at 9), those theories did not form the basis of Defendants' Brief in Support of Motion to Dismiss (Doc. 21). Therefore, the Court will not consider them.

7

applied in a case such as the one currently before this Court, Plaintiff's claims against Defendants under § 1983 purportedly arise under the Fourteenth Amendment.

Under Section 1983, however, local governments are responsible only for "their own illegal acts," and "are not vicariously liable . . . for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 131 (2011). Nonetheless, under *Monell*, a municipality may be held liable under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690. To ultimately prevail on a *Monell* claim, a plaintiff bears the burden to "identify a municipal 'policy' or 'custom' that caused the plaintiff's [constitutional] injury." *Bd. Of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997).

The Third Circuit Court of Appeals has further explained that there are "three situations where acts of government employees may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). "The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of the policy." *Id.* "The second occurs where no rule has been announced as a policy, but federal law has been violated by an act of the policymaker itself." *Id.* The third scenario occurs "where the policymaker has failed to act affirmatively at all, though the

need to take some action to control the agents of government is so obvious, and the inadequacy of existing practice so likely to result in a violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to that need." *Id.*

Under the third scenario, "a local government's decision not to train certain employees about their legal duty to avoid violating citizen's constitutional rights may rise to the level of an official government policy for purposes of §1983." *Connick*, 563 U.S. at 60. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous when a claim turns on a failure to train." *Id.* Where, as here, Plaintiff seeks to impose liability against CYS based on its failure to train, "liability under Section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come in contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

The "deliberate indifference" standard is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. Ordinarily, this requires a plaintiff to show "[a] pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62. Indeed,

> [A] [p]olicymaker's *continued adherence* to an approach that they know or should know failed to prevent tortious conduct by employees may establish the conscious disregard for the consequence of their actions—the deliberate indifference— triggering municipal liability. Without notice that a course of training is deficient in a particular respect, decision makers can

9

> hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Id.* (emphasis in original)

The Supreme Court has also recognized "single-incident" failure to train liability, where a pattern of constitutional violations need not be established. *Canton*, 489 U.S. at 390 n.10. Under single-incident failure to train liability, deliberate indifference can be established where the need for training "can be said to be 'so obvious' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights" even absent a pattern of constitutional violations. *Id.* Nonetheless, single-incident failure to train liability is extremely narrow. *See id.* at 391 ("[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct," is insufficient to establish single-incident failure to train liability).

In addition to establishing deliberate indifference, Plaintiff must also demonstrate that the identified deficiency is "closely related to the ultimate [constitutional] injury.'" *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1028 (3d Cir. 1991) (alterations in original) (quoting *Canton*, 489 U.S. at 391). The operative inquiry to establish causation, therefore, rests on whether "the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Canton*, 489 U.S. at 391. Although causation must be proven separately from deliberate indifference, "[t]he high degree of predictability [in a single-incident case] may also support an inference of causation—that the

municipality's indifference led directly to the very consequence that was so predictable." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 226 (3d Cir. 2014) (quoting *Brown*, 520 U.S. at 409–10).

In the present case, Defendants argue that Plaintiff, in her Amended Complaint, makes general and vague allegations with respect to the failure to train claim and the remaining allegations are conclusory. In their Brief, Defendants focus almost exclusively on the following allegations in Plaintiff's Amended Complaint:

> Defendants, their various agents, servants, and/or employees, while acting under color of state law, unlawfully, intentionally, unreasonably, maliciously, with deliberate indifference and/or with reckless indifference to Leah's civil rights violated 42 U.S.C.A. § 1983 and deprived Leah of her rights guaranteed under the Constitution of the United States, causing the aforementioned injuries by acting as follows:
>
> a. Having a pattern, custom, policy, or practice that resulted in their failure to properly investigate the removal of C.B. from Leah's home;
>
> b. Having a pattern, custom or policy that resulted in their failure to properly train and/or establish proper training procedures for their employees and agents;
> c. Failing to train their employees in the context of child-removal proceedings;
>
> d. Failing to train their employees in the context of formal proceedings;
>
> e. Violating various Child Protective Services laws;
>
> f. Staffing non-qualified and incompetent personnel;

  g. Failing to obtain a non-coerced written voluntary separation agreement prior to causing C.B. to be removed from Leah's home;

  h. Adhering to a history and custom of being deliberately indifferent to training as to parents' and children's constitutional rights; and

  i. Having a pattern, custom or policy that resulted in their failure to properly train and/or establish proper training procedures for their employees and agents

(Doc. 11, ¶ 36). Defendants generally assert that these allegations do not state a claim because Plaintiff has not proffered any facts regarding a pattern or practice on the part of Defendants that resulted in constitutional injury. Importantly, Defendants also do not recognize the single-incident liability standard, which, to some extent, forms the basis for Plaintiff's Amended Complaint. For the following reasons, Defendants have not met their burden to show that no claim has been stated.

  With respect to liability under *Monell*, although Plaintiff's claims are largely conclusory and the factual support is minimal, the claims in the Amended Complaint, when viewed all together and construed in a manner most favorable to Plaintiff, sufficiently plead a plausible failure to train claim. To the extent that Plaintiff's claims against Defendants are based on a theory of single-incident liability under *Monell*, one could reasonably infer from the nearly two-year removal of Brizzy's child that Defendants were "deliberately indifferent" and failed to train their employees in the conduct of child-removal investigations and formal proceedings. Put differently, retaining a child for over two years, where the investigation

revealed no evidence of abuse or neglect, could reflect a need for training that is "so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584. Furthermore, it is plausible that the injury[2] claimed by Plaintiff would have been avoided had the employees been trained under a program that was not deficient.

The allegations, taken all together and at this point, also sufficiently allege a potential pattern of constitutional violations, which could be further defined through discovery. As set forth in *Iqbal*, the reviewing court must draw on its judicial experience and common sense in determining the plausibility of a complaint. The facts of this case coupled with the nature of Child and Youth Services proceedings, where information regarding the nature of each case is not readily accessible by the public, further support the sufficiency of the Amended Complaint at this juncture.

Finally, Plaintiff's Amended Complaint also alleges, and Defendants do not refute, plausible constitutional injuries—deprivation of substantive and procedural due process— that resulted from Defendants' alleged failure to train. Indeed, the allegations in Plaintiff's Amended Complaint—that CYS, knowing that it had no evidence of abuse or neglect, removed C.B. from Brizzy's home for over two years (Doc. 11, ¶ 39), and that CYS

---

[2] As discussed later in the text, Defendants do not argue that Plaintiff has not sufficiently alleged a constitutional injury.

13

prevented Brizzy from having continual contact with the child (Doc. 11, ¶ 38)—presents a colorable claim of conscience-shocking behavior such that a substantive due process claim at this stage is plausible. *See Croft v. Westmoreland Cty. Children and Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997) ("[A] state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse."); *Miller v. City of Philadelphia*, 174 F.3d 368, 375–76 (3d Cir. 1999) ("[I]n order for liability to attach, a social worker need not have acted with the 'purpose to cause harm,' but the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'"). Moreover, the Plaintiff alleges a failure of process by which C.B. was continuously separated from Brizzy (and the failure of CYS to obtain a non-coerced written voluntary separation agreement. (*Id.* at ¶¶ 37, 38).

Thus, at the pleading stage, Plaintiff has met her obligation to "nudge" the failure to train claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Court recognizes that Plaintiff has barely met this standard. However, as other District Courts within this Circuit have held, a plaintiff need not plead a *Monell* claim with extensive specificity with respect to a defendant's exact policies and practices or explain how the precisely alleged policies and practices caused the plaintiff's injury prior to any discovery. *See, e.g., Davis v. City of Philadelphia*, 284 F. Supp. 3d 744, 754 n. 17 (E.D. Pa. 2018)

14

("[S]everal courts in this circuit, recognizing *Monell* plaintiffs' lack of access to municipal policy information at this early stage, have held that plaintiffs are not required 'to plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies, [or] explain how these precisely alleged policies caused or contributed to their injuries.'"); *Keahey v. Bethel Twp.*, 2012 WL 478936, at *7 (E.D. Pa. 2012) (holding that the failure to train claim was "too premature" to justify dismissal because at the pleading stage plaintiff could not "prove such a pattern without a sufficient period of discovery to adduce this evidence"); *Ramos-Vasquez v. PrimeCare Med., Inc.*, 2010 WL 3855546, at *9 (E.D. Pa. 2010) ("The allegations are 'conclusory' in the sense that it is reasonable for Plaintiff to conclude that the actions he complains of were undertaken pursuant to some policy, procedure or custom . . . . At this stage, Plaintiff cannot be expected to specify and articulate which policy, procedure or custom resulted from these actions; nor should he be expected to know which entity formulated each policy. Therefore, the Court holds that Plaintiff's allegations are sufficient to state a claim against the County . . . ."). The Court believes, at this point, the record needs to be further developed on these issues. The outstanding issues are better addressed after discovery has been completed and the record has been further developed.

The Court, therefore, concludes that Plaintiff has pled facts sufficient to sustain § 1983 claims under *Monell* against Defendants. Defendants' Motion to Dismiss will be denied.

### B. Punitive Damages

Defendants contend that Plaintiff's Amended Complaint sets forth a claim for punitive damages. Plaintiff concedes that she did not demand punitive damages. Moreover, nowhere in Plaintiff's Amended Complaint did she set forth a claim for punitive damages. Because punitive damages are, therefore, not at issue, further discussion is not warranted.

### IV. CONCLUSION

For the aforementioned reasons, the Court will deny Defendants' "Motion to Dismiss Plaintiff's Amended Complaint Pursuant to FED. R. CIV. P. 12(b)."

A separate order follows.

*/s/ Robert D. Mariani*
Robert D. Mariani
United States District Court Judge